# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. MJ 19-0096-B
One LG Cellular telephone bearing telephone number (251) 752-4837 and )
IMSI No: 310410188237387, currently located at DEA Mobile, 23100 )
McAuliffe Drive, Robertsdale, Alabama 36567. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

for further description, see Attachment A

located in the _____Southern_____ District of _____Alabama_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Conspiracy to Possess with Intent to Distribute Methamphetamine. |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Fred Ott, Special Agent, DEA
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: May 20, 2019

*Judge's signature*

City and state: Mobile, Alabama     SONJA F. BIVINS, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK LG SMARTPHONE BEARING IMSI #310410188237387, CURRENTLY LOCATED IN CUSTODY OF THE DEA MOBILE RESIDENT OFFICE. | Case No. MJ 19-0096-B |

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT REGARDING THE DATA STORED IN MOBILE COMMUNICATIONS DEVICE SEIZED ON MAY 15, 2019 FROM ROBERT CHANDLER, IN MONTGOMERY, ALABAMA.

1. I, Fred Ott, a Special Agent with the Drug Enforcement Administration (DEA), am employed as an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code.

2. I have been employed as a Special Agent with DEA since December 2004. I was initially assigned to the El Paso Field Division for approximately five years before being transferred to the St. Thomas (USVI)

Resident Office for three years. I was then assigned to the Mobile Resident Office in June 2013, where I have been stationed since. Prior to joining DEA, I was a police officer in Alabaster, Alabama for approximately eleven years, spending a portion of that time as a DEA Task Force Officer in the Birmingham Resident Office. Throughout my employment I have led, supervised and participated in several complex investigations concerning the importation, manufacture, trafficking and distribution of controlled dangerous substances in violation of state and Federal laws by structured criminal organizations. I have authored, obtained and served state and Federal search, seizure and arrest warrants in furtherance of the above-described investigations. Further, I have training and experience with the application for, and exploitation of, telecommunication and stored electronic information devices to include mobile telephones and associated hand-held computing devices, pen register / trap-and-trace devices, cell site data/information, and the interception of wire communications.

3. I am aware, based on training, experience and observation, that drug traffickers routinely communicate with criminal associates involved with the transport, delivery, sale and receipt of controlled substances. Drug trafficking criminal associates include, but are not limited to, source(s) of supply for controlled substances, individuals engaged in facilitating drug

2

trafficking activities and end-user customers. A common means by which drug traffickers and their criminal associates facilitate communication when not engaged in 'face-to-face' direct conversation is through mobile telephones and associated hand-held communication devices with multimedia capability (e.g., voice, text and e-mail). I am aware that drug traffickers place a significant dependence on mobile communication devices to facilitate criminal activity by placing and receiving drug orders, determining drug prices and type/quantities available beforehand and coordinating meeting times and locations to consummate drug transactions. Further, your affiant is aware that drug traffickers record and document their criminal activities through the use of mobile communication devices in a manner similar to legitimate business practices, in that criminals (a) take photographs and video displays of drugs and illicit financial proceeds; (b) create contact lists of customers, criminal associates and drug source(s) of supply; (c) maintain electronic ledgers of drug quantities purchased or sold, and of monies due or owed. I am aware that drug traffickers rely on telecommunication devices to conceal the existence, nature, scope and identity(ies) of their criminal associates and activities from detection and scrutiny by law enforcement through the use of (a) numerical codes and code words to identify criminal associates, drug type(s) and quantities, and

dates/times/locations involved with drug transactions; (b) the practice of obtaining and registering communication devices under fictitious names or in the name of relative(s) and/or other third-party individuals (c) the practice of obtaining and registering multiple communication devices under a single user name using fictitious information and providing those communication devices to members within a criminal organization.

4.   Your affiant makes this affidavit from personal knowledge based on my direct participation in the investigation and by information obtained from other criminal investigators and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant for the "devices", your affiant has not set forth every fact learned during the course of this investigation.

## **IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5.   The property to be searched is a black LG smartphone bearing IMSI #310410188237387 and telephone number (251) 752-4837 (hereinafter, "device"), currently located in the possession of the DEA Mobile Resident Office.

4

6. The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying and preserving stored electronic information, in particular communication records and data more specifically described in Attachment B.

## PROBABLE CAUSE

7. On March 27, 2019, agents with the DEA Mobile RO and deputies with the Baldwin County Sheriff's Office (BCSO) arrested three individuals, following a traffic stop in Baldwin County, Alabama, for possession of approximately 9 ounces of methamphetamine (ice). One of the individuals arrested on this date, referenced in this affidavit as cooperating defendant (CD1), cooperated with agents following his/her arrest. CD1 advised agents that an individual identified as Oscar OLMEDO had provided CD1 with approximately 10 ounces of methamphetamine (ice) the previous day at the Fairfield Inn and Suites hotel in Spanish Fort, Alabama. CD1 further gave agents two telephone numbers utilized by OLMEDO in furtherance of his drug trafficking activities; to include the transaction with CD1 the previous day. Toll analysis conducted on these telephone numbers revealed numerous contacts between OLMEDO's telephones and several other individuals previously identified in this investigation as methamphetamine (ice) traffickers.

8.  Following the arrest of CD1 and others, agents initiated surveillance at the Fairfield Inn and Suites, where CD1 advised he/she had obtained the methamphetamine (ice) from OLMEDO. Agents observed as two Hispanic males exited the parking lot of the hotel in a vehicle registered to Oscar OLMEDO. The vehicle was stopped by a BCSO deputy and the occupants were identified. Following a subsequent consensual search of the vehicle, deputies located items of drug paraphernalia and arrested both occupants. One of the arrestees, referenced as cooperating defendant 2 (CD2), advised that he/she wished to speak with arresting agents. Agents spoke with CD2, who told agents that he was instructed by his boss, whom CD2 identified as Oscar OLMEDO, to clean out the items from Fairfield Inn and Suites rooms 201 and 211 because one of his customers, CD1, had been contacted by law enforcement. CD2 did as told, and advised that the items he/she was arrested with were retrieved from those hotel rooms. CD2 lastly told agents that OLMEDO is the head of a methamphetamine (ice) trafficking ring in Baldwin County, Alabama and obtains approximately 3-6 kilograms of methamphetamine (ice) a week from various locations; to include, Houston, Texas, Atlanta, Georgia and Fort Walton, Florida.

9.  The following day, agents traveled to the Fairfield Inn and Suites and made contact with hotel personnel. Agents learned that rooms 201 and 211

were rented by Oscar OLMEDO. As agents were present at the hotel, two individuals arrived and removed items from the hotel rooms registered to OLMEDO. Both parties were contacted in the parking lot of the hotel and consented to speak with agents. An eventual consensual search of the items removed from the hotel rooms, and the vehicle the two individuals drove to the hotel, revealed methamphetamine (ice). Also found in the items removed from the hotel room was a piece of luggage with a tag displaying Oscar OLMEDO's name and address. Both subjects were placed under arrest for possession of methamphetamine (ice). Prior to being transported to the Baldwin County jail, both subjects advised agents that they were tasked with removing the items from the hotel room by Oscar OLMEDO.

10. Following the aforementioned arrests, toll analysis by DEA Mobile revealed that OLMEDO discontinued his use of the identified cell phones shortly afterwards. Through extensive toll analysis of the cell phones utilized by known methamphetamine (ice) traffickers that maintain frequent contact with OLMEDO, agents were able to identify a cell phone (device) that agents believed was now being used by OLMEDO in furtherance of his drug trafficking activities. On May 8, 2019, agents obtained a court order from the Baldwin County District Court, allowing agents to obtain real-time location data for the "device". During subsequent physical surveillances of

OLMEDO, in conjunction with the court authorized real-time location data for the "device", agents were able to definitively confirm that OLMEDO was the sole user of the "device". The most recent confirmation occurred during the late evening of May 14, 2019, as agents observed OLMEDO and the "device" together in Baldwin County, Alabama. Agents observed as OLMEDO eventually departed Baldwin County and traveled to a hotel in Pensacola, Florida. Agents were also able to confirm, via physical surveillances, that OLMEDO was currently driving a white Hummer H3 that is registered in his name.

11. The following morning, May 15, agents observed via the real-time location data as the "device" traveled from the hotel in Pensacola to a convenience store in Loxley, Alabama in the early morning hours, where it stayed for a short period of time. The "device" then began traveling northbound, eventually arriving in the Atlanta, Georgia area. Agents observed as the "device" traveled to several spots in the Atlanta area before eventually traveling south, back towards the Baldwin County area. In conjunction with DEA Montgomery, OLMEDO's white Hummer was observed as it traveled from Atlanta and into the Montgomery, Alabama area, as affirmed by the real-time location data obtained for the "device". A marked Montgomery Police Department (MPD) unit was able to perform a

traffic stop of the white Hummer for a traffic violation in the Montgomery city limits. Contact was made with the driver and sole occupant, who was identified as Loxley, Alabama resident Robert CHANDLER. Following a canine alert on the vehicle, MPD officers located and seized approximately 4 kilograms of methamphetamine (ice) from the vehicle, concealed within a diaper box. CHANDLER refused to speak with officers and claimed ownership of the only cell phone present in the vehicle, the "device". While CHANDLER was detained for the traffic stop, Mobile RO agents received several real-time location "pings" for "device", which showed its location as the same location of the traffic stop.

12. Your affiant submits that there is probable cause to believe the above-described device will contain evidence of drug trafficking activity to include, but not limited to, contact telephone numbers and names/aliases of known and as-yet unidentified criminal associates and stored electronic data comprising evidence of prior or planned criminal activity. Based on the fact that OLMEDO has been known to utilize a mobile telephone during the commission of his drug trafficking activities as stated above, your affiant believes that a search of the "device" will reveal such evidence.

13. Your affiant therefore requests that a search warrant be issued by the court granting permission for your affiant and investigative assistants to

9

access the memory of the "device" identified above to review, analyze, collect and otherwise obtain all available stored electronic data from the above-described "device", including stored telephone numbers assigned, data stored in electronic media within this "device" and all other potential evidence, to include but not limited to: outgoing and incoming call detail records, contact lists including names and telephone numbers, text messages, calendar entries, multimedia documentation and stored historical geo-location data.

14. The "device" is currently being retained by DEA after it was seized from Robert CHANDLER subsequent to his arrest. Based on the information contained within the foregoing paragraphs above, I seek this warrant to ensure that any examination of the "device" will ensure compliance with the Fourth Amendment and other applicable laws.

## **TECHNICAL TERMS**

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Mobile (e.g., wireless or cellular) telephone: A mobile telephone is a hand-held wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers,

10

enabling communication with other mobile telephones or traditional 'land line' telephones. A mobile telephone usually contains a 'call log', which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, mobile telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic 'address books', sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and video footage; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Mobile telephones may also include global positioning system (GPS) technology for determining the geographic location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images.

11

      Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (e.g., MP3 Player, iPod) is a hand-held digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated GPS) consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude (and sometimes altitude) with a high degree of precision.

e.  Smartphone/tablet computer: A smartphone or tablet computer (formerly, a personal digital assistant or PDA) is a

13

hand-held electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some smartphones and tablet computers also function as mobile communication devices and are used to access the Internet and send and receive e-mail, or use voice over internet protocol (VoIP) technology to facilitate face-to-face communication via video calls (e.g., Skype, FaceTime). Smartphones or tablet computers usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most smartphones or tablet computers run computer software, giving them many of the same capabilities as personal computers. For example, smartphone and tablet computer users can work with word-processing documents, spreadsheets, and presentations. Smartphones and tablet computers may also include global positioning system ("GPS") technology for determining the location of the device.

16. Based on my training and experience, I am aware that the "device" has capabilities that allows it to serve as **a mobile (wireless or cellular) telephone, digital camera, portable media player, GPS navigation device and smartphone/tablet computer**. Further, I am aware that examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

17. Nature of examination. Based on the foregoing, and consistent with Rule 41(e) (2) (B), the warrant I am applying for would permit the examination of the "device" consistent with the warrant. The examination may require authorities to employ techniques including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the "device" to human inspection in order to determine whether it is evidence described by the warrant.

18. Manner of execution. Because this warrant seeks only permission to examine the "device" already in the possession of law enforcement, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time of the day or night.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the "device" described in this affidavit to seek the items described in Attachment B.

Respectfully submitted,

_____
Fred Ott
Special Agent
Drug Enforcement Administration

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 20th
DAY OF MAY, 2019.

_____
SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT B

1. All records on the "device" described in Attachment A that relate to violations of Title 21 USC, Sections 841 (a)(1), 843 (b), 846, 848, and Title 18 USC Section 1952 and involve Oscar OLMEDO, including:

   a. Lists of customers and all related identification information;

   b. Types, quantities and prices of drugs trafficked, as well as dates, places and amounts of specific transactions;

   c. Any and all information related to sources for drugs (including names, addresses, phone numbers, or all other identification information);

   d. Any and all information recording Oscar OLMEDO's schedule(s) or travel(s);

   e. Any and all bank records, checks, credit card bills, account information, and other financial records;

   f. Any and all text messages, short message service (SMS) or multimedia messaging service (MMS) messages;

   g. Any and all voicemails or e-mails.

2.   Evidence of user attribution, demonstrating or indicating who used or owned the devices at the time the items described in this warrant were created, edited or deleted, to include logs, phonebooks, saved usernames and passwords, documents and browsing history(ies);

As used above, the terms 'records' and 'information' include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.